U.S. LIFESAVING EQUIPMENT MANU- FACTURERS' ASSOCIATION, Plaintiff,

v.

Elizabeth H. DOLE, et al., Defendants.

Civ. A. No. 83-0527.

United States District Court, District of Columbia.

May 4, 1983.

Timothy A. Vanderver, Duane A. Siler, Joan A. McCarthy, Patton, Boggs & Blow, Washington, D.C., for plaintiff.

Charles F. Flynn, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM ORDER

HAROLD H. GREENE, District Judge.

Merchant vessels that are subject to the United States Coast Guard inspection and certification requirements must carry Coast Guard-approved lifesaving equipment (such as inflatable liferafts, lifeboats, and various lifeboat equipment). 46 C.F.R. Part 160 mandates that before any such lifesaving equipment on Coast Guard-inspected vessels may be installed, the preliminary plans and design specifications must be submitted for a "pre-manufacture" inspection. The regulations also require "production" inspections of approved equipment in the presence of a Coast Guard marine inspector.

In 1979, new procedures for testing lifesaving equipment were adopted. See 46 C.F.R. Part 159; 44 Fed.Reg. 73,038 (Dec. 17, 1979). These regulations allow the Commandant of the Coast Guard to require that the factory testing of lifesaving equipment be performed by independent laboratories, or in some cases by the manufacturers themselves, rather than by Coast Guard marine inspectors themselves. Because such inspectors had not previously been available in foreign countries, the Part 159 regulations had the effect of permitting Coast Guard approval of foreign lifesaving equipment for the first time.

The Part 159 regulations do not automatically adopt the independent laboratory testing procedures for all items of lifesaving equipment described in Part 160, however. Instead, Part 159.001–7 provides

> The Commandant may substitute the procedures of this part for the procedures in any other part of this subchapter. Each person known to be affected by the substitution shall be informed that the procedures in this party apply.

46 C.F.R. Part 159.001–7. Pursuant to this provision, the Coast Guard gradually began to bring various items of Part 160 lifesaving equipment under the independent laboratory inspection provisions of Part 159.[1]

On March 3, 1982, the Commandant of the Coast Guard notified all domestic and foreign manufacturers of inflatable liferafts that the Part 159 inspection procedures would be substituted for liferafts as of October 1, 1982, and that the manufacturers would thereafter have to make arrangements for inspection of such equipment by independent laboratories. Lifeboats and associated lifeboat equipment (*i.e.*, winches, release gear, and hand-propelled gear) are scheduled to come under the independent laboratory procedure of Part 159 as of October 1, 1983 on a voluntary basis, and as of October 1, 1984 on a mandatory basis (at which time Coast Guard marine inspectors will no longer be available for inspection services).

In a motion for preliminary injunction filed simultaneously with the complaint in this action, plaintiff—which represents a number of manufacturers of lifesaving equipment in the United States—seeks an order prohibiting the defendants from accepting as valid any inspection of liferafts, lifeboats, or lifeboat equipment performed under the Part 159 regulations.[2] Plaintiff's primary contention is that the Part 159 inspection procedures may not be instituted

---

1. This was accomplished by two methods: (1) amendments to Part 160 regulations (including technical changes in the specifications) and adoption of Part 159 procedures (see, *e.g.*, § 160.021, visual distress signals); or (2) substitution pursuant to § 159.001–7 of the Part 159 procedures for those of Part 160 by notification to persons known to be affected. See, *e.g.*, Letter from R.L. Market, Merchant Vessel Inspection Division, to various manufacturers, June 17, 1982 (personal flotation devices).

2. On September 30, 1982, plaintiff formally objected to the Coast Guard's implementation of Part 159 procedures for this equipment without prior notice and opportunity for public comment. On January 4, 1983, the Coast Guard rejected plaintiff's contentions, but notified

for such lifesaving equipment without prior notice and opportunity for public comment in accordance with the Administrative Procedure Act, 5 U.S.C. § 553.

For the reasons stated below, the Court finds that plaintiff has made a strong showing of eventual success on the merits but that irreparable injury has not been demonstrated.

While the notice and comment procedures of 5 U.S.C. § 553 were complied with when the Part 159 regulations were proposed in 1978, the preamble to the Notice of Proposed Rulemaking contained the following language:

> The procedures under this program would eventually affect all the lifesaving equipment specifications in part 160 except those for lifeboats, including disengaging apparatus and hand-propelling gear, inflatable liferafts, winches, and davits, which may be considered by the Coast Guard at a later date.

43 Fed.Reg. 49440, 49441 (Oct. 23, 1978).[3] Defendant argues that this language was meant merely to indicate that the Coast Guard was not committing itself at that time to a particular timetable with respect to the extension of the Part 159 procedures to inflatable liferafts, lifeboats, and lifeboat equipment, but that such an extension was clearly forecast. The relevant question, however, is not intent but adequate notice. In view of the express exception for liferafts and lifeboats contained in the preamble of the Notice, and the fact that it was nowhere stated in the Notice that the Part 159 procedures might be extended to liferafts and lifeboats without a *de novo* rulemaking, it cannot be said that interested parties had fair notice that the 1978–79 rulemaking[4] would provide the basis for applying the new inspection procedures of Part 159 to liferafts, lifeboats, and lifeboat equipment.[5] If anything, the Notice seemed to indicate the opposite.[6] Thus, the notice and comment requirements of 5

---

plaintiff that it would not require any liferaft manufacturer to utilize independent testing organizations until a new rulemaking to revise the subsection of Part 160 pertaining to inflatable liferafts is completed. The result of making the Rule 159 procedures optional is that plaintiff's members and other domestic manufacturers are currently not required to obtain independent laboratory inspections of inflatable liferafts but may continue to utilize the free services of Coast Guard marine inspectors. Foreign manufacturers, on the other hand, must employ independent laboratories because, as before, Coast Guard marine inspectors are not available in other countries.

3. The same statement exempting inflatable liferafts, lifeboats, and lifeboat equipment appears in the preamble to the final rule adopting Part 159. See 44 Fed.Reg. 73038 (Dec. 17, 1979).

4. In particular section 159.001–7.

5. Responding to commenter's contention that the Commandant could not lawfully substitute the new procedures of Part 159 for any type of lifesaving equipment without further rulemaking, the Coast Guard argued that the preamble to the Notice gave manufacturers of potentially affected equipment adequate warning as follows:

> The preamble of the proposal clearly stated that 'the procedures under this program would eventually affect all of the lifesaving equipment specifications in Part 160' with certain specified exceptions.

44 Fed.Reg. at 73040 (Dec. 17, 1979). This could reasonably be read to indicate that Part 159.001–7 would not be used to substitute the Part 159 inspection procedures for inflatable liferafts, lifeboats, and lifeboat equipment.

6. On November 6, 1978, the Coast Guard sent a copy of the October 23, 1978, Notice to all manufacturers of Coast Guard-approved lifesaving equipment. The cover letter stated:

> [W]ithin the next few years, approval inspections and tests for all Coast Guard equipment except lifeboats, liferafts, and their launching equipment will be conducted under the independent laboratory procedures. Lifeboats, liferafts and their launching equipment will continue to be inspected by Coast Guard marine inspectors, but these may come under independent laboratory procedures at a later date.

This language, too, did not provide notice that Part 159.001–7 could be used at a future date to extend the Part 159 procedures to liferafts and lifeboats without an additional rulemaking.

U.S.C. § 553 were not satisfied.[7] See, *e.g.,* *Wagner Electric Corp. v. Volpe,* 466 F.2d 1013, 1014 (3d Cir.1972) (adequate notice for purposes of section 553 means more than notice which would alert only the most knowledgeable reader to the scope and purpose of the proposed rule).

Despite the showing made by plaintiff on the merits of its case, the Court will not issue a preliminary injunction because plaintiff has not demonstrated that it will be irreparably harmed in the absence of this injunctive relief. The Coast Guard agreed to postpone the mandatory use of the Part 159 procedures. See note 2 *supra.* Thus, no manufacturer is being compelled at this time to incur the expense of independent laboratory testing. Moreover, while it is doubtful that loss of sales due to competition from foreign manufacturers could constitute sufficient irreparable harm for purposes of a preliminary injunction, defendant has conceded that, should plaintiff succeed on the merits, any inflatable liferafts, lifeboats, and lifeboat equipment inspected under the Part 159 procedures and installed on Coast Guard-inspected vessels would be required to be replaced by lifesaving equipment inspected under Part 160 until a new rulemaking is completed. Thus, domestic manufacturers will not permanently lose sales as a result of the denial of a preliminary injunction.

In view of the strong showing by plaintiff on the merits, the Court will establish an expedited schedule for the submission of motions for summary judgment.[8] The

Court will then be able to make a prompt determination of the merits, and to grant such relief, if any, as may be appropriate.

For the reasons stated, it is this 3rd day of May, 1983,

ORDERED That plaintiff's motion for a preliminary injunction be and it is hereby denied, and it is further

ORDERED That the parties shall submit motions for summary judgment within twenty days from the date of this order, and responses thereto within ten days thereafter.

---

7. The letters which the Coast Guard sent to manufacturers of liferafts, lifeboats, and their launching equipment in March 1982 clearly did not meet the notice requirements of 5 U.S.C. § 553. Those letters simply announced the effective dates of the new inspection procedures for various types of lifesaving equipment. The letters neither solicited comments on the agencies' decision nor did they explain why the agency had decided to substitute the Part 159 procedures at that time. See *Home Box Office, Inc. v. FCC,* 567 F.2d 9, 35 (D.C.Cir.1977).

In opposition to plaintiff's motion for a preliminary injunction, defendant also argues that the Coast Guard's decision to switch from the Part 160 procedures to the Part 159 procedures is exempt from the notice and comment requirements of 5 U.S.C. § 553(b)(A). This argument does not appear to be well taken, however, as the action taken by the Coast Guard

permits foreign manufacturers of lifesaving equipment to enter the United States market for the first time and thus significantly affects the interests of plaintiff's members and other domestic manufacturers. See, *e.g., Batterton v. Marshall,* 648 F.2d 694, 707 (D.C.Cir.1980) (exception provided for by § 553(b)(A) does not apply "where agency action trenches on substantial private rights and interests"); *State v. New Jersey v. EPA,* 626 F.2d 1038 (D.C.Cir. 1980) (§ 553(b)(A) should be narrowly construed).

8. Either party may elect to have the Court consider its pleadings and memoranda submitted on the motion for preliminary injunction as its pleadings and memoranda on the motion for summary judgment.